UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

RUBEN GONZALO DURAN SANCHEZ,

    Defendant.

Case No.  1:18-cr-00220-JLT-SKO-1

MEMORANDUM AND ORDER: (1) DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255, (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY, and (3) DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR PLAINTIFF AND CLOSE THE CASE

## I.     INTRODUCTION

Ruben Gonzalo Duran Sanchez seeks to vacate, set aside, or correct the January 30, 2020 judgment entered upon his guilty plea to one count of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).[1]  (Docs. 112, 112-1.)  He seeks relief on grounds that: (1) appointed trial counsel Caroline McCreary was ineffective (i) at the change-of-plea hearing by failing to object to the Court's failure to determine a factual basis for his guilty plea, and (ii) at sentencing by failing to object to the Court's denial of Movant's right to mitigation allocution in violation of Rule 32(i)(4)(ii); and (2) appointed federal appellate counsel Benjamin Lechman was ineffective by failing to raise on direct appeal McCreary's noted ineffective assistance.

---

[1] The Motion was timely filed.  28 U.S.C. § 2255(f); (Doc. 117 at 19).

Having reviewed the pleadings, the record, the files, and the controlling law, the Court finds that: (1) Movant's constitutional claims are not a basis for relief, (2) the plea agreement and its appellate and collateral attack waivers are valid, (3) an oral hearing on the motion is not warranted, and (4) a certificate of appealability shall not issue.

## II.    BACKGROUND

Movant was charged by indictment with Count One–conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; Counts Two & Three – distribution and possession of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and Count Four – possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  (Doc. 15 at 2-4.) With the assistance of appointed trial counsel, Movant entered a plea of not guilty.  (Doc.  20; *see also* Doc. 83 at 6.)

Pursuant to the plea agreement set forth that: (1) Movant plead guilty to Count One, (2) government dismissed Counts Two through Four, (3) government recommended a sentence at the low end of the applicable guideline range, and (4) Movant waived rights to appeal and/or collaterally attack his plea, conviction, forfeiture order, restitution, or sentence, with certain exceptions.  (Doc. 34 at 2-6, 9-10.)  The plea agreement also includes: (1) sentencing guideline stipulations pursuant to Rule 11(c)(1)(B), (2) the nature and elements of the Count One offense, (3) Movant's agreement that he fully understood the nature and elements of crimes charged in the indictment to which he plead guilty as well as the possible defenses thereto, and that he discussed those with his attorney, and (4) the statutory sentencing minima and maxima.  (Doc. 34 at 6-8.)

Movant agreed to the factual basis for the indictment and plea, and that "he is in fact guilty of these charges and that the facts set forth in the Factual Basis for the Plea attached [to the plea agreement] as Exhibit A are accurate."  (Doc. 34 at 2,  12.)  Movant signed, dated, and admitted the truth and accuracy of the Factual Basis for Plea, as follows:

> Between approximately September 1, 2018 and September 26, 2018, in the County of Kern, State and Eastern District of California, [Movant] conspired with others to possess with the intent to distribute and to distribute methamphetamine.

> In furtherance of this conspiracy, on September 13, 2018, in Kern County, [Movant] possessed with intent to distribute approximately 224.1 grams of 99% pure methamphetamine (221.8 grams of actual methamphetamine).

> Also in furtherance of this conspiracy, on September 26, 2018, in Kern County, [Movant] possessed with the intent to distribute the following quantities of methamphetamine: (1) 4,471 grams of 99% pure methamphetamine (4,426 grams of actual methamphetamine); (2) 443.5 grams of 100% pure methamphetamine; (3) 440.8 grams of 99% pure methamphetamine (436.3 grams of actual methamphetamine); and (4) 6.87 grams of 100% pure methamphetamine.
>
> Also on September 26, 2018, in Kern County, [Movant] possessed a stolen, loaded Sig Sauer 380 Caliber semi-automatic pistol in his vehicle.
>
> [Movant] admits that at all times relevant to the indictment, he knew that methamphetamine was a controlled substance under federal law.  [Movant] agrees that for purposes of determining the offense level specified in the Drug Quantity Table of the
>
> Sentencing Guidelines, he should be held accountable for (sic) of 5,534.47 grams of actual methamphetamine.  [Movant] agrees that the base offense level applicable to the amount of methamphetamine he conspired to possess is a level 38.

(Doc. 34 at 12, Exhibit "A" thereto.) Movant's change of plea was taken in open court on November 4, 2019.  (Doc. 37; Doc. 71 at 2-7.)  The Court accepted Movant's guilty plea as knowing, intelligent and voluntary.  (*Id.*)

At the January 27, 2020 sentencing hearing, the Court considered and rejected the objection to considering Movant's prior conviction and calculated the sentencing guideline range. It heard the defense argument for a downward variance and Movant's allocution. Afterward, the Court imposed the sentence of 263 months imprisonment, a special assessment of $100, and 60 months of supervised release, and dismissed Counts Two through Four upon the government's motion.  (Doc. 53; Doc. 72 at 3-8.)  The Court entered written judgment in the case on January 30, 2020.  (Doc. 55.) Movant filed a notice of appeal that same day.  (Doc. 54.)

Movant argued that the Court misadvised him of the statutory maximum penalty during the Rule 11 plea colloquy, it erred in shifting the burden to him to disprove his criminal history and erred in imposing a sentence based on a 10:1 ratio for actual methamphetamine.  (*See* Doc. 107.) The Ninth Circuit affirmed Movant's guilty plea and sentence. *United States v. Duran Sanchez*, 860 Fed. Appx. 98 (9th Cir. 2021) (Doc. 107 herein).  The Circuit found that (1) the Court's errant reference to the maximum sentence during the Rule 11 plea colloquy did not prejudice Movant's substantial rights, *Duran Sanchez*, 860 F. App'x at 99, (2) the appeal waiver was knowing and voluntary, *id.*, (3) the alleged error at sentencing regarding a prior conviction was covered by the appeal waiver, *id.* at 100,

1    and (4) the alleged substantive unreasonableness of the sentence imposed was covered by the appeal

2    waiver, *id*.

3                                    **III.    LEGAL STANDARD**

4            A person in custody under sentence of a federal court "may move the court which imposed the

5    sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a); *see also United States v.*

6    *Hayman*, 342 U.S. 205, 217 (1952).  The permissible grounds for a motion under § 2255 are "that the

7    sentence was imposed in violation of the Constitution or laws of the United States, or that the court

8    was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

9    authorized by law, or is otherwise subject to collateral attack. . . ."  28 U.S.C. § 2255(a).

10           To warrant relief, the prisoner must demonstrate the existence of an error of constitutional

11   magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's

12   verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331

13   F.3d 1052, 1058 (9th  Cir. 2003) ("*Brecht's* harmless error standard applies to habeas cases under

14   § 2255[.]").  Relief on an asserted error of law is warranted only upon the showing of "a fundamental

15   defect which inherently results in a complete miscarriage of justice."  *Davis v. United States*, 417 U.S.

16   333, 345-46 (1974), citing *Hill v. United States*, 368 U.S. 424, 428-29 (1962).

17            "Conclusory allegations which are not supported by a statement of specific facts do not

18   warrant habeas relief."  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*,

19   878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion

20   do not support relief); *Neighbors v. United States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial

21   of § 2255 motion where the allegations regarding ineffective assistance of counsel were entirely

22   conclusory and without support in the record). If a court finds that relief is warranted under § 2255, it

23   must "'vacate and set the judgment aside'" and then do one of four things: "'discharge the prisoner or

24   resentence him or grant a new trial or correct the sentence as may appear appropriate.'"  *United States*

25   *v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999) (quoting 28 U.S.C. § 2255).

26                                    **IV.     ANALYSIS**

27   **A.    Movant's claims are properly before the Court**

28           Movant alleges ineffective assistance by his trial and appellate counsel, which violated his

                                              4

1   rights under the Sixth Amendment.  Movant's claimed ineffective assistance of counsel in violation of

2   the Sixth Amendment falls within § 2255. Movant's claims are not procedurally barred.  The motion

3   alleges only claims of ineffective assistance of counsel.  (*See* Docs. 112, 118 at 4-5.)  The government

4   concedes that claims of ineffective assistance may be raised for the first time under § 2255.  (*See* Doc.

5   117 at 25 citing *Massaro v. United States*, 538 U.S. 500, 503–04 (2003).)  Thus, the Court need not

6   and does not reach the government's argument regarding procedural bar of non-constitutional

7   violations of Rules 11 and 32. (*See* Doc. 117 at 25-28.)

8   **B.      Waiver**

9            In his plea agreement, Movant expressly waived his right to appeal and collaterally attack his

10  plea, conviction, and sentence.  The plea agreement provides:

11           Movant] agrees as part of this plea/pleas, however, to give up the right to appeal the
             guilty plea, conviction, and the sentence imposed in this case as long as the sentence
12           does not exceed the statutory maximum.  [Movant] understands that this waiver
             includes, but is not limited to, any and all constitutional and/or legal challenges to the
13           [Movant's] conviction and guilty plea, including . . . any and all claims that the
             statement of facts attached . . . is insufficient to support the [Movant's] guilty plea.
14
             […]
15
             In addition, regardless of the sentence the [Movant] receives, the [Movant] also gives
16           up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or §
             2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-
17           waivable claims.

18  (Doc. 34 at 9.)

19           The plea agreement states that the waiver of those rights was knowing and voluntary. In the

20  plea agreement, trial counsel states that she read and discussed the agreement fully with Movant and

21  that she concurred in his entering the guilty plea.  (Doc. 34 at 10.) In the plea agreement, Movant

22  states that he read the agreement, carefully reviewed it with trial counsel, understood it, and

23  voluntarily agreed to the terms.  (Doc. 34 at 11.)  Movant also stated that he consulted with trial

24  counsel and fully understood his rights with respect to applicable provisions of the sentencing

25  guidelines, that no promises or inducements were made other than as contained in the plea agreement,

26  that no one threatened or forced him to enter the plea agreement, and that he was satisfied with the

27  representation of trial counsel in the case.  (*Id.*)  A court-certified Spanish interpreter stated in the plea

28  agreement that he read the entire contents thereof to Movant and translated it from English to Spanish.

1   (*Id.*)

2   "Generally, an express waiver of a statutory right, including the right to file section 2255

3   petitions, bars the defendant from moving the sentencing court to vacate, set aside, or correct the

4   sentence*." Martinez-Carranza v. United States*, 2015 WL 2159821, at *2 (E.D. Cal. May 7, 2015)

5   (citing *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir. 1993)).  A plea agreement is a contract

6   and subject to contract law standards.  *United States v. Escamilla,* 975 F.2d 568, 571 (9th Cir.1992).

7   A defendant may waive the right to bring a § 2255 petition.  *Abarca,* 985 F.2d at 1013.  "[A] prisoner

8   may not collaterally attack a judgment if the prisoner waived the right to do so."  *United States v.*

9   *Racich,* 35 F. Supp. 2d 1206, 1210 (S.D. Cal. 1999).

10   A plea agreement does not waive the right to bring a § 2255 petition unless it does so

11   expressly.  *United States v. Pruitt,* 32 F.3d 431, 433 (9th Cir. 1994).  The right to bring a collateral

12   attack under § 2255 is statutory, and a "knowing and voluntary waiver of a statutory right is

13   enforceable."  *Abarca,* 985 F.2d, at 1014.  "The scope of a knowing and voluntary waiver is

14   demonstrated by the express language of the plea agreement."  *United States v. Anglin,* 215 F.3d 1064,

15   1066 (9th Cir. 2000), superseded by rule on grounds as stated in *United States v. Lo*, 839 F.3d. 777,

16   784 n.1 (9th Cir. 2016).  Thus, a plea waiver is enforceable where it encompasses the right to relief on

17   the grounds raised, and the waiver is knowingly and voluntarily made.  *United States v. Goodall*, 21

18   F.4th 555, 561 (9th Cir. 2021).

19   However, "a plea agreement that waives the right to file a federal habeas petition . . . is

20   unenforceable with respect to an [ineffective assistance of counsel] claim that challenges the

21   voluntariness of the waiver itself."  *Id.* (citing *Washington v. Lampert,* 422 F.3d 864, 871 (9th Cir.

22   2005)).  In *Washington*, the Court reasoned that an ineffective assistance of counsel claim cannot be

23   barred by an agreement that "itself" was "the very product of the alleged ineffectiveness," because

24   "[t]o hold otherwise would deprive a defendant of an opportunity to assert his Sixth Amendment right

25   to counsel where he had accepted the waiver in reliance on delinquent representation."  *Id.* at 868-69

26   (quoting *Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir.1999)); *cf. Martinez-Carranza*, 2015

27   WL 2159821, at *3 (citing *Ceja v. United States,* 2010 WL 4806904, at *3 (E.D. Cal. Nov. 18, 2010))

28   ("[W]here waivers of rights to appeal or collaterally attack a sentence or conviction are knowingly and

voluntarily accepted as part of a negotiated plea agreement and where the petitioner's allegations challenge neither the voluntariness of the plea or its waivers, and where the grounds alleged are within the scope of the waivers, the waivers will be held enforceable against all challenges including those expressed as ineffective assistance of counsel."); *United States v. Chavez,* 2013 WL 4780510, at **3-4 (E.D. Cal. Sept. 5, 2013) *report and recommendation adopted*, 2013 WL 5708459 (E.D. Cal. Oct. 16, 2013) (same).  Thus, in the context of § 2255 challenge, an otherwise effective plea waiver cannot bar ineffective assistance of counsel claims based upon the negotiation of plea agreements or waivers therein.  *See Martinez-Carranza*, 2015 WL 2159821, at *3 (collecting cases).

In determining whether a defendant knowingly and voluntarily waived a right in a plea agreement, courts consider the "circumstances surrounding the signing and entry of the plea agreement . . .")  *United States v. Malauulu*, 2020 WL 3642611, at *3 (E.D. Cal. July 6, 2020) (quoting *Lo*, 839 F.3d, at 783). Movant argues that trial counsel's failure to object to the insufficient factual basis for the plea "inherently raises the knowing and voluntary nature of the guilty plea itself."[2]  (Doc. 118 at 6.) Because Movant may not be able to "waive a claim of ineffective assistance of counsel based on [trial counsel's] erroneously unprofessional inducement . . . to plead guilty or accept a particular plea bargain[,]" *Pruitt,* 32 F.3d at 433, the Court scrutinizes Movant's ineffective assistance of counsel claims.  Movant bears the burden to show the plea agreement and its appellate and collateral attack waivers were not knowing and voluntary.  *United States v. Michlin*, 34 F.3d 896, 899 (9th Cir. 1994).

## C.    Ineffective Assistance

### 1.    Legal Standard

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Sixth Amendment right to the effective assistance of counsel extends to the plea-

---

[2] The Motion does not raise as a ground for relief Rule 11(b)(2), which requires that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."

bargaining process, including the decision whether to accept or reject a plea offer.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).  The negotiation of a plea bargain is a "critical phase of litigation" for purposes of the Sixth Amendment right to effective assistance of counsel.  *Padilla v. Kentucky,* 559 U.S. 356, 373 (2010) (citing *Hill,* 474 U.S., at 57).

The law governing ineffective assistance of counsel claims is clearly established.  *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir. 1998).  In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S., at 694. First, "deficient performance" means representation that "fell below an objective standard of reasonableness."  *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland*, 466 U.S., at 688).  The movant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances.  *See Strickland*, 466 U.S., at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) (same).  There is a strong presumption that counsel's performance fell within the wide range of professional assistance.  *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S., at 689); *see also Bloom v. Calderon*, 132 F.3d 1267, 1270-71 (9th Cir. 1997); *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990).  Judicial scrutiny of counsel's performance is highly deferential.  *Strickland*, 466 U.S., at 677-78; *Quintero-Barraza*, 78 F.3d, at 1348; *see also Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, to demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S., at 694.  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' "  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S., at 693).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S., at 694; *United States v. Leonti*, 326 F.3d 1111, 1120 (9th Cir. 2003) (same); *see also Premo v. Moore*, 562 U.S. 115, 125 (2011) ("[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage."

In *Hill,* 474 U.S. at 57–58, the Supreme Court adapted the two part *Strickland* standard to

challenges to guilty pleas based on ineffective assistance of counsel. The voluntariness of the plea depends on whether the advice was within the range of competence demanded of attorneys in criminal cases. The defendant must show that counsel's representation fell below an objective standard of reasonableness. Second, there must be prejudice to the defendant in that but for counsel's unprofessional errors, he would have not pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S., at 57–59; *see also United States v. Freeny,* 841 F.2d 1000, 1002 (9th Cir.1988) (same).

## 2. Change of Plea

### i. *Deficient Performance*

Movant claims that at change-of-plea hearing, trial counsel unreasonably failed to object to the Court's failure to determine the factual basis for the plea as required by Rule 11(b)(3). According to Movant, the plea colloquy lasted about five minutes during which the Court simply read the indictment aloud and then asked Movant how he plead. (Doc. 112 at 4; Doc. 112-1 at 6-9 citing Fed. R. Crim. P. 11(b)(3).) Movant suggests the Court failed to identify and determine the sufficiency of his admissions as a basis for a knowing and voluntary guilty plea to Count One. (*See* Doc. 118 at 3-6 citing *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007), *United States v. Ataya*, 884 F.3d 318, 326 (6th Cir. 2018).) The government responds that trial counsel acted reasonably because the Court did not vary from Rule 11(b)(3). It argues the record contains facts sufficient to establish all the essential elements of the crimes to which Movant plead. It argues that any technical violation of Rule 11 is not alone constitutional error. (Doc. 117 at 24, 28- 31 citing *Ceja*, 2010 WL 4806904, at *2; *see also id.* at 25.)

A guilty plea is valid if it is both voluntary and intelligent. *Brady v. United States*, 397 U.S. 742, 747 (1970). It must be a knowing, intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S., at 748. The *Hill* Court recognized that "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 474 U.S., at 56 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)).

//

1

**(1)    No Violation of Rule 11(b)(3)**

2      Movant has not shown the change of plea Court varied from Rule 11(b)(3).  *See United States*

3  *v. Peterson*, 995 F.3d 1061, 1065 (9th Cir. 2021) (citing *United States v. Mancinas-Flores*, 588 F.3d

4  677, 682 (9th Cir. 2009)) (noting that "a court need not rely on the plea colloquy alone," but may rely

5  upon "anything that appears on the record"); *United States v. Kamer*, 781 F.2d 1380, 1384 (9th Cir.

6  1986) (indicating that in "non-complex cases, a reading of the indictment may suffice" to inform the

7  defendant of the nature of the charges); *cf. United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th

8  Cir. 1999), as amended (Dec. 6, 1999) (review for compliance with Rule 11(b)(1)(G) [formerly Rule

9  11(c)(1)] regarding failure to inform as to nature of the charge to which defendant is pleading, is

10  limited to the record of the plea proceedings).

11      As to Rule 11's factual basis requirement, it is settled in this Circuit that:

12  Rule 11(b)(3) requires the court to determine that the plea has a factual basis. The purpose of
   this requirement is to ensure that the defendant is not mistaken about whether the conduct he
13  admits to satisfies the elements of the offense charged. *McCarthy*, 394 U.S. at 466–67, 89 S.Ct.
   1166. Put differently, the factual basis requirement is designed to "protect a defendant who is
14  in the position of pleading voluntarily with an understanding of the nature of the charge but
   without realizing that his conduct does not actually fall within the charge." Fed.R.Crim.P. 11
15  advisory committee's note (1966). *See also United States v. Mastrapa*, 509 F.3d 652, 658–60
   (4th Cir. 2007) (stating that the factual basis requirement guards against possible discrepancy
16  between the defendant's acknowledgment of guilt and his or her understanding of what the
   crime entailed).

17              [---]

18
   Rule 11(b)(3) does not specify the exact nature of the inquiry that a district court must make
19  when determining whether a guilty plea has a factual basis. However, the Advisory Committee
   notes to the 1974 amendments suggest that "[a]n inquiry might be made of the defendant, of
20  the attorneys for the government and the defense, of the presentence report when one is
   available, or by whatever means is appropriate in a specific case." Thus, a court need not rely
21  on the plea colloquy alone and "may conclude that a factual basis exists from anything that
   appears on the record." *Mastrapa*, 509 F.3d at 660 (internal quotation marks omitted). Further,
22  as indicated in *Alford*, a court can find a factual basis for a plea even if the defendant insists
   that he is innocent. 400 U.S. at 37, 91 S.Ct. 160; *United States v. Neel*, 547 F.2d 95, 96 (9th
23  Cir.1976). In such circumstances, the court must look to other evidence in the record to
   determine whether the plea has a factual basis. *See Maxwell*, 368 F.2d 735, 739 n. 3 (9th Cir.
24  1966) (noting that trial court could have found factual basis for plea even though defendant
   could not personally vouch for his guilt).

25

26  *Mancinas-Flores*, 588 F.3d at 681-82.

27      The record amply supports the Court's determination of the Rule 11(b)(3) factual basis upon

28  which Movant knowingly and voluntarily pleaded guilty.  For example, the criminal complaint

includes the charged offenses and outlines the facts supporting probable cause (Doc. 1). The

indictment charged Movant with Count One (21 U.S.C. §§ 846 & 841(a)(1) conspiracy to distribute

and possess with intent to distribute methamphetamine), Count Two (21 U.S.C. § 841(a)(1)

distribution and possession with intent to distribute methamphetamine), Count Three (21 U.S.C. §

841(a)(1) possession with intent to distribute methamphetamine), and Count Four (18 U.S.C. §

924(c)(1)(A) possession of a firearm in furtherance of a drug trafficking crime), and it sets out the

penalties (Doc. 15). The plea agreement includes a description of Count One and its elements,

Movant's plea waivers and Movant's admission of guilt on Count One and of the true facts supporting

his plea. It also recites the maximum possible sentence of life in prison and Movant's statement that he

understood the plea agreement and discussed it with trial counsel.  (Doc. 34.)

The November 4, 2019 plea colloquy amply supports the Court's determination of the factual

basis for Movant's plea, as follows:

**Q.** What is your name, please.

**A.** Ruben Gonzalo Duran Sanchez.

**Q.** I believe I have your plea agreement in front of me, and I believe you signed it twice. Do you remember signing the plea agreement twice?

**A.** Yes.

**Q.** The signatures to me mean that you have had a chance to review this entire document with the help of your lawyer and an interpreter; that if you had questions, you asked, and your lawyer answered, and that you have no more questions. Is that what the signatures mean to you?

**A.** Yes.

**Q.** When you went through this document, did you understand the elements of the crime?

**A.** Yes.

**Q.** Did you understand the facts?

**A.** Yes.

**Q.** And are those facts true?

**A.** Yes.

**Q.** Do you understand that the maximum possible sentence in this case is a lifetime term of imprisonment, fine of $10 million, or both, a lifetime term of supervised release, and a special assessment of a hundred dollars?

1      **A.** Yes.

2      **Q.** Do you understand that this -- that Count 1 carries a maximum term of ten years, a
       mandatory minimum of incarceration, and a five-year mandatory minimum term of
3      supervised release unless there is a motion by the government for less time?

4      **A.** Yes.

5      **[…]**

6      **Q.** Do you understand that you are giving up your right to appeal?

7      **A.** Yes.

8      […]

9      **Q.** Do you have any questions about the plea agreement at all?

10     **A.** No.

11     **Q.** When you went through the plea agreement with an interpreter, did you have any
       problems with Spanish-to-English, English-to-Spanish?

12
       **A.** No.
13
       **Q.** If you wanted to go to trial, all you would have to do is tell me so, and I would set the
14     matter -- well, actually, the matter is set for trial next month, and it would go to trial in a
       timely fashion under the law. You would be there. Your lawyer would be there. An
15     interpreter would be there.

16     […]

17     The government would be obligated to attempt to prove their case, and they would do it by
       bringing in witnesses and evidence. You would watch those witnesses testify. Your lawyer
18     would ask questions of those witnesses for you. If you wanted to testify, you could. If you
       didn't want to, nobody would use it against you. You could bring in witnesses and evidence.
19     We would help you get that here by the subpoena power of the Court, and your trial would be
       open to the public, just like today's hearing is. Do you understand those trial rights?
20
       **A.** Yes.
21
       **Q.** Do you wish to give them up and plead guilty?
22
       **A.** Yes, I plead guilty.
23
       **Q.** Not quite yet. I just want to make sure that that's what you wish to do. Are you giving up
24     your trial rights?

25     **A.** Yes.

26     **Q.** Is anybody forcing you or threatening you in any way to get you to do this?

27     **A.** No.

28     **Q.** Is anybody promising you anything other than what's in the plea agreement?

1    **A.** No.

2    **Q.** I am not a part of the plea agreement. If I don't follow it, you cannot take your change of plea back; do you understand that?

3

4    **A.** Yes.

5    **Q.** I'm obligated to consider the federal guidelines in sentencing, but I'm not obligated to follow them, and if I don't, you can't take your change of plea back; do you understand that?

6    **A.** Yes.

7    **Q.** Do you have any questions now at all?

8    **A.** No, it's fine.

9    THE COURT: Is there any reason I should not now take the change of plea?

10    MS. MCCREARY: No.

11    MR. TIERNEY: No, your Honor.

12    BY THE COURT:

13    **Q.** What I will do is I will read you Count 1. If you don't understand something, tell me. If you want to talk with your lawyer in private, tell me. I will give you that opportunity, but I won't know that unless you interrupt and tell me that you have an issue. All right?

14

15    **A.** Okay, fine.

16    **Q.** In the indictment, in Count 1, the Grand Jury charges you and another, from in or about September 1, 2018, to on or about September 26, 2018, in the County of Kern, State and Eastern District of California, and elsewhere, you knowingly and intentionally conspired with each other and with other persons, both known and unknown to the Grand Jury, to distribute and to possess with the intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21 of United States Code, sections 846 and 841(a)(1).

17

18

19    As to Count 1, how do you wish to plead, guilty or not guilty?

20    **A.** Guilty.

21

22    **Q.** It is further alleged in that same count that the offense involved 50 grams or more of methamphetamine, and 500 grams or more of a mixture or substance containing a detectible amount of methamphetamine, in violation of Title 21 of United States Code section 841(b)(1)(A). Do you admit that additional allegation or do you deny that additional allegation?

23

24    **A.** Yes I admit it.

25

26    THE COURT: Court accepts the knowing, intelligent, and voluntary waiver of rights, knowing, intelligent, and voluntary change of plea.

27    […]

28    THE COURT: Anything else?

13

MS. MCCREARY: No, thank you.

(Doc. 71 at 2-7.)  The Court engaged Movant and ensured that he knowingly and voluntarily entered into the plea agreement. Movant understood the nature of the charges, he admitted his guilty to the charged offense, he understood the penalties for the charged offense, and he understood and voluntarily waived his trial rights as well as certain post-conviction rights.  *See e.g., United States v. Barker*, 681 F.2d 589, 592 (9th Cir. 1982) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)) (the primary purpose of Rule 11 is to protect the defendant's rights to trial, confrontation and avoidance of compulsory self-incrimination); *Kamer*, 781 F.2d, at 1383 (quoting *McCarthy v. U.S.,* 394 U.S. 459, 465 (1969)) ("[T]here is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him.") (emphasis in original).

Thus, the Court further finds that Movant has not shown his noted Rule 11 colloquy is a basis to overcome the "strong presumption" of truthfulness afforded to his "solemn declarations made in open court."  *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986).

### (2)    No Deficient Conduct at Change of Plea

Movant has not overcome the presumption that trial counsel acted reasonably by refraining from objecting to the Rule 11 plea colloquy based upon an inadequate factual basis.  *Strickland*, 466 U.S., at 689;  *see also Hill*, 474 U.S., at 56 (citing *McMann v. Richardson,* 397 U.S. 759, 771 (1970)) ("[T]he voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases[;]"); *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (citing *McMann*, 397 U.S., at 771)) ("If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases[.]").

Movant has not demonstrated that trial counsel acted deficiently by failing to make a meritless objection.  *See James*, 24 F.3d at 27 (counsel's failure to raise a meritless argument does not amount to ineffective assistance); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance."). A Rule 11(b)(3) objection at the plea colloquy would have been meritless, and thus futile, for the reasons stated.

Movant does not claim or proffer facts that trial counsel was otherwise deficient in the guilty

plea process, the plea agreement, or the voluntary and knowing nature of his guilty plea. *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) ("A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available."). Movant's sworn testimony and signed plea agreement are evidence that he carefully reviewed every part of the plea agreement with trial counsel; that he understood it including the charges and elements thereof, plea waivers, maximum penalty and guideline calculations, all of which he discussed with trial counsel along with possible defenses to the charges; that he agreed to the truth of the facts constituting the basis for his guilty plea; and that he voluntarily agreed to plead because he was guilty of the charges.  (*See* Doc. 71 at 2-7; Doc. 34 at 1-12.)

When a defendant admits to the facts, which serve as the factual basis supporting his guilty plea in his plea agreement and in open court at the change-of-plea hearing, he cannot show unreasonable conduct by his attorney.  *See, e.g., United States v. Venegas-Sagaste*, 2014 WL 2600132, at *3 (D. Nev. June 10, 2014) (no ineffective assistance where defendant, advised of his rights, admitted the facts constituting the basis for his guilty plea in his plea agreement and in open court at change of plea, and allocated on mitigation of sentence); *see also United States v. Herrera*, 377 F. App'x 602, 602 (9th Cir. 2010)  ("The district court did not err pursuant to Fed. R. Crim. P. 11(b)(3) because both Herrera and his counsel agreed with the government's factual summary.").[3]

Still, Movant argues that the facts before the change of plea court were insufficient to support the guilty plea.  (Doc. 112-1 at 8.) Movant suggests the instant indictment was not sufficiently unique or detailed, and that facts in the change of plea record were not elicited from Movant during the plea colloquy.  (Doc. 112-1 at 8 citing *United States v. Rivera-Ramirez,* 715 F.2d 453, 457 (9th Cir. 1983).) The Court is unpersuaded. Rule 11(b)(3) does not specify the exact nature of the inquiry to determine whether a guilty plea has a factual basis.  Nor is the Court's determination of the adequacy of the factual basis for the guilty plea limited to the plea colloquy.  The existing record at the time of the change of plea was sufficient for the Court to determine a factual basis for the plea existed.  That

---

[3] See n.4.

1  another court may have approached the factual basis inquiry differently is not sufficient to find

2  otherwise.

3  　　　To the extent Movant argues that trial counsel acted deficiently by failing to object on

4  grounds the Court failed to make the Rule 11(b)(1)(N) determinations, relief thereon is unwarranted.[4]

5  (*See* Doc. 118 at 3 citing *Ataya*, 884 F.3d at 326.)  This ground for relief is not raised in the motion

6  and is not properly before the Court. Even still, Movant has not shown that the Court deviated from

7  Rule 11(b)(1)(N). Indeed, Movant's testimony at change of plea confirmed his statements in the plea

8  agreement that he read, understood, and voluntarily agreed to the plea waivers.  (*See* Doc. 71 at 2-7);

9  *see also United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022) ("A plea agreement is made

10  knowingly if the defendant understands the terms and, to a certain extent, the consequences of the

11  agreement [citation]); *Martinez-Carranza*, 2015 WL 2159821, at *3 ("A plea agreement is made

12  voluntarily if the defendant is not induced by promises or threats to enter the agreement.").

13  　　　Finally, to the extent Movant alleges trial counsel was deficient by failing to object to

14  insufficient evidence supporting the government's case, the plea agreement itself is a bar. A guilty

15  plea waives any prior constitutional violation.  A guilty plea is "a break in the chain of events which

16  has preceded it in the criminal process."  *Tollett,* 411 U.S., at 267 ("[After entering a guilty plea, a

17  defendant] may not thereafter raise independent claims relating to the deprivation of constitutional

18  rights that occurred prior to the entry of the guilty plea.").  Generally, a guilty plea erases claims of

19  constitutional violations arising before the plea.  *United States v. Montilla,* 870 F.2d 549, 552 (9th

20  Cir.1989).

21  　　　　　　　***ii.      Prejudice under Strickland and Hill***

22  　　　Movant claims that due to trial counsel's deficient performance, his plea was inherently

23  unknowing and involuntary.  (Doc. 112 at 4, Doc. 112-1 at 6-9 citing Rule 11(b)(3), *Barker*, 681 F.2d,

24  at 592, *Neel*, 547 F.2d, at 96 (citing *Boykin*, 395 U.S., at  243); see also Doc. 118 at 6 citing Rule 11

25  advisory committee's notes (1966).)

26  　　　As discussed above, the two-part standard adopted in *Strickland* for evaluating claims of

27
28
　　　　[4] Rule 11(b)(1)(N) provides that a court, during the plea colloquy, must inform the defendant of, and determine that the
defendant understands "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the
sentence[.]"

ineffective assistance of counsel applies to guilty plea challenges.  *Hill,* 474 U.S., at 52.  In order to satisfy the second, or "prejudice," prong, the defendant must show that  absent his attorney's incompetence, he would "rational[ly]" have "reject[ed] the plea bargain" and would "either have gone to trial or received a better plea bargain[.]" *Rodriguez*, 49 F.4th at 1213 (citing *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015)) (quoting *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004)); *see also Hill*, 474 U.S., at 58-59; *Padilla*, 559 U.S., at 372; *Lee v. United States*, 582 U.S. 357, 364–65 (2017) ("[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors,  he would not have pleaded guilty and would have insisted on going to trial.").

The Supreme Court in *Hill* observed:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us…that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). [T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." [*Strickland*,] 466 U.S. at 695.

474 U.S., at 59-60.

"A court evaluating an ineffective assistance of counsel claim is limited to evidence contemporaneous to the guilty plea, and looking at the contemporaneous evidence, the court assesses (1) how likely the defendant would be to prevail at trial; (2) the defendant's relative connections to the United States and to his country of citizenship; (3) the relative consequences of the defendant's guilty plea compared to a guilty verdict at trial; and most importantly, (4) any evidence of how important the immigration consequences were to the defendant at the time he pleaded guilty."  *Rodriguez*, 49 F.4th, at 1214.

1    Even if Movant could show trial counsel acted deficiently by failing to object at the change-of-

2    plea hearing, he has made no effort to demonstrate *Strickland*/*Hill* prejudice. His mere assertion that

3    trial counsel's allegedly deficient conduct rendered his guilty plea "inherently" unknowing and

4    involuntary is conclusory and does not address the *Strickland*/*Hill* standard. Movant points to no facts

5    contemporaneous with his change of plea, that absent trial counsel's deficient conduct, he would have

6    acted rationally in rejecting the plea deal in favor of a better plea deal or trial.  *See e.g., James,* 24 F.3d

7    at 26 ("[C]onclusory allegations [of ineffective assistance of counsel] which are not supported by a

8    statement of specific facts do not warrant habeas relief."); *Stein v. U.S.,* 390 F.2d 625, 627 (9th

9    Cir.1968) ("[i]t is well-established that mere conclusory allegations are not sufficient to warrant relief

10   under a § 2255 motion.").

11   The record demonstrates that Movant understood the criminal charges and the elements

12   thereof; the evidence supporting the government's case; and the possible penalties.  Movant admitted

13   the true facts underlying his plea that established his guilt to Count One. He discussed these matters

14   and the plea agreement with his trial counsel and confirmed his understanding of the plea agreement.

15   Movant was anxious to plead guilty to Count One in return for the government's recommendation for

16   a sentence in the low end of the guideline range.  (*See* Docs. 34, 71); *see also Padilla*, 559 U.S., at

17   372. Ultimately, Movant received substantial benefit from the plea deal. Before the plea agreement,

18   Movant's sentencing exposure was 292 to 365 months' incarceration. Through the plea deal, he

19   received a sentence of 263 months' incarceration.  The government also dismissed the three remaining

20   Counts. Thus, the Court cannot conclude that Movant would have or could have acted rationally in

21   rejecting the plea deal.

22                          ***iii.     Plea Agreement and Waivers***

23   The government asserts that Movant's claim of ineffective assistance by trial counsel at change

24   of plea is foreclosed by the appellate and collateral attack waivers in the plea agreement.  (Doc. 117 at

25   22-24.) Movant replies as above that trial counsel's ineffective assistance at change of plea rendered

26   his plea agreement and waivers unknowing, involuntary, and invalid.  (Doc. 118 at 2-4, 8.) The Court

27   finds the plea agreement and waivers were knowingly and voluntarily entered, and not invalidated by

28   alleged ineffective assistance of trial counsel at change of plea, for the reasons stated and those that

1   follow.

2      When a criminal defendant, after having been advised by counsel, has solemnly admitted in

3   open court that he is guilty of a charged offense, he may not thereafter raise independent claims

4   relating to deprivation of constitutional rights, but may only attack the voluntary and intelligent

5   character of the plea by showing that counsel's advice was not within the standards of established

6   Supreme Court authority. *Tollet,* 411 U.S., at 258; *see also Peterson*, 995 F.3d at 1067 (the district

7   court was entitled to rely upon Peterson's assurance that he understood the elements of the crime to

8   which he entered a guilty plea); *Chizen*, 809 F.2d at 562 (noting that "statements made by a criminal

9   defendant contemporaneously with his plea should be accorded great weight" because "[s]olemn

10  declarations made in open court carry a strong presumption of verity"). As discussed above, to

11  comport with the guarantees of due process, a guilty plea must be voluntary and intelligent. *Boykin*,

12  395 U.S., at 242; *see also United States v. Butcher*, 926 F.2d 811, 817 (9th Cir.1991) ("A conviction

13  that is based upon a plea that is not voluntary and intelligent is invalid.") The accused must be aware

14  of the elements of the charges against him, the constitutional rights he is waiving by pleading guilty,

15  and the possible punishment he faces. *Boykin*, 395 U.S., at 242-43.

16     Movant reviewed and discussed the plea agreement with trial counsel, understood its terms,

17  admitted the facts constituting guilt to Count One and the basis for his guilty plea, and thereupon

18  waived trial rights and appellate and collateral relief. Movant has not shown that he entered the plea

19  agreement and plea waivers unknowingly and involuntarily. *See Lo*, 839 F.3d, at 784 (a district

20  court's failure to inform the defendant of the terms of a plea agreement's appeal or collateral attack

21  waiver is not plain error where the record shows the waiver was knowing and voluntary). Movant

22  does not proffer facts or argue that he did not understand the terms of the plea agreement, or otherwise

23  did not enter the agreement knowingly and voluntarily. *See United States v. Uribe*, 2022 WL

24  17343863, at *3 (E.D. Cal. Nov. 30, 2022) (plea colloquy established plea agreement was voluntarily

25  entered); *see also Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) ("[H]abeas petitioner bears

26  the burden of establishing that his guilty plea was not voluntary and knowing."). Nor may Movant

27  claim the government proceeded upon insufficient evidence prior to his change of plea. *See*

28  *Tollett,* 411 U.S., at 267; *see also United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010)

1  (movant's "evidence-based" claim that "called into doubt the overall weight of the evidence against

2  him" is not cognizable in § 2255 motion).

3         Relatedly, the Court observes that the Ninth Circuit, in its decision affirming judgment upon

4  Movant's guilty plea, found on *de novo* review that Movant knowingly and voluntarily entered into

5  and signed the plea agreement and plea waivers.  *Duran Sanchez*, 860 F. Appx. at 99. Therefore, the

6  Court concludes the appellate and collateral attack waivers are valid and enforceable as to waivable

7  claims. However, the Court declines the government's invitation to apply the waivers to claimed

8  ineffective assistance of counsel at the change-of-plea hearing. As discussed above, that constitutional

9  claim places in issue the voluntariness of the plea agreement and is non-waivable to that extent.

10  *Washington,* 422 F.3d at 871.

11         **3.      Sentencing**

12              ***i.      Collateral Attack Waiver***

13         The government asserts that Movant's § 2255 claim of ineffective assistance by trial counsel at

14  sentencing is foreclosed by the plea agreement's collateral attack waiver.  (Doc. 117 at 24.)  The

15  government points to cases wherein plea waivers barred claims raising denial of Rule 32(i)(4)(A)(ii)

16  mitigation allocution, the claim Movant raises here.  *See Id.* citing *United States v. Savage*, 406 Fed.

17  Appx. 220, 221 (9th Cir. 2010); *United States v. Nunez-Pompa*, 538 Fed. Appx. 787, 787–88 (9th Cir.

18  2013); *United States v. Tinoco*, 436 Fed. Appx. 794, 795 (9th Cir. 2011).[5]  Movant replies by repeating

19  his above argument that trial counsel's ineffective assistance at change of plea rendered his plea

20  agreement and waivers "inherently" unknowing, involuntary, and invalid.  (Doc. 118 at 2-4, 8.) The

21  Court finds the plea waivers were knowingly and voluntarily entered and not invalidated by alleged

22  ineffective assistance of trial counsel at change of plea, for the reasons stated.

23         The Court also finds the collateral attack waiver is a bar to Movant's claim of ineffective

24  assistance by trial counsel at sentencing.  The claim is waivable because it is unrelated to the validity

25  of the plea agreement, *see Pruitt,* 32 F.3d at 433, and it is within the above noted scope of the

26  collateral attack waiver, *see Martinez-Carranza*, 2015 WL 2159821, at *3. Therefore, the Court

27  concludes the collateral attack waiver bars the § 2255 claim of ineffective assistance by trial counsel at

28
_____
[5] See n.4.

1    sentencing.  Even if the collateral attack waiver were not a bar, the claim is not a basis for § 2255

2    relief, as discussed below.

3                          ii.      **Deficient Performance**

4            Movant claims that at sentencing, trial counsel unreasonably failed to object when the Court

5    failed to advise him that he had the right to speak on any matter in mitigation of sentence as required

6    by Rule 32(i)(4)(ii).  (*See* Doc. 112 at 5; Doc. 112-1 at 10-11; Doc. 118 at 6.) At sentencing, the

7    district court must "address the defendant personally in order to permit the defendant to speak or

8    present any information to mitigate the sentence."  *United States v. Gunning*, 401 F.3d 1145, 1147 (9th

9    Cir. 2005) citing Rule 32(i)(4)(A)(ii); *see also United States v. Depape*, 2024 WL 2749426, at *1

10   (N.D. Cal. May 28, 2024) (citing *Green v. United States*, 365 U.S. 301, 304 (1961)) ("Taken in the

11   context of its history, there can be little doubt that the drafters of [predecessor Rule 32(a)] intended

12   that the defendant be personally afforded the opportunity to speak before imposition of sentence. . . .

13   The most persuasive counsel may not be able to speak for a defendant as the defendant might, with

14   halting eloquence, speak for himself.").

15                    **(1)      No Violation of Rule 32(i)(4)(ii)**

16           Movant has not shown that he was denied the right to allocute on sentencing mitigation as

17   required by Rule 32(i(4)(ii).  *See United States v. Mack*, 200 F.3d 653, 658 (9th Cir. 2014),  (trial court

18   did not violate defendants' right to allocution at sentencing hearing where defendants were personally

19   addressed by court and provided with opportunity to present information bearing on mitigation).

20           On January 27, 2020, the following sentencing colloquy took place between the Court and

21   Movant:

22           THE COURT: What is your name, please.

23           THE DEFENDANT: Ruben Gonzalo Duran Sanchez.

24           THE COURT: Sir, have you had a chance to review the Presentence Report with your
             attorney?
25
             THE DEFENDANT: Which one is it? I don't know.
26
             THE COURT: It's the probation report.
27
             THE DEFENDANT: Oh, yes.
28

1    THE COURT: Do you have any questions that remain?

2    THE DEFENDANT: No.

3    THE COURT: The Court has received and reviewed the Presentence Report, the defendant's
sentencing memorandum, the defendant's objections, and the government's memorandum and
4    motion. The Court notes the offense level is 37. History Category is IV. The guideline range is
292 to 365, with a probation recommendation at the low end. The Court has considered the
5    3553(a) factors.

6    [---]

7    THE COURT: All right. Is there anything, sir, you want to tell me?

8    THE DEFENDANT: I wanted to see if you had seen the letter. Was the letter delivered?

9    THE COURT: I have not seen any letter from you. Is it from you?

10    THE DEFENDANT: No. My sister-in-law wrote the letter. Okay.

11    THE COURT: I have not seen a letter from your sister-in-law.

12    MS. MCCREARY: The letter from the sister-in-law is with regard to there is one incident as
far as his previous charge that is erroneous, in that his brothers gave his name. And so I
13    objected to that, and then there was a followup letter from the sister-in-law regarding the fact
that his brother would routinely give my client's name instead of his own, and that in this
14    particular incident, it was his brother, not him.

15    THE COURT: Are you wanting me to adjudicate that today?

16    MS. MCCREARY: No, but I did object to that particular, and I submitted that objection.

17    THE COURT: The objection I have is to that which you just argued, on the pure versus actual
methamphetamine issue. And the other objection concerns page 11 --
18
MS. MCCREARY: Yes.
19
THE COURT: -- of the PSR, paragraph 46.
20
MS. MCCREARY: Yes.
21
THE COURT: Correct?
22
MS. MCCREARY: Yes.
23
THE COURT: Hang on one second. Yes, I see it. That's Document 48, at line 19, the objection,
24    but I'm not seeing any letter.

25    MS. MCCREARY: I do have the letter. I just received it. May I approach?

26    THE COURT: I accept your representation, but I'm back to your question. Are you wanting me
to somehow adjudicate that? We have a family member telling me that the prior under his
27    name that is indicated is not -- was not true.

28

22

How am I supposed to know just from a letter from a family member? If that were enough, we would adjudicate a lot of things.

MS. MCCREARY: Correct. And that is what I noticed as well.

THE COURT: Okay. That objection is overruled. The Court does not have sufficient information upon which to conclude that the prior is not his prior. On the objection concerning the pure or actual, that objection is overruled based on the reasoning in Document 49, at page 2, line 7, through page 3, line 19. The government's motion that is pending is granted.

Is there anything else from the government?

MS. ALSWORTH: No, your Honor. I would submit it.

THE COURT: Anything further?

MS. MCCREARY: Submitted.

THE COURT: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that you are committed to the custody of the Bureau of Prisons, to be imprisoned for a term of 263 months. . .

(Doc. 72 at 2-6.)

Rule 32(i)(4)(ii) provides that "[A]t sentencing, the court . . . [b]efore imposing sentence . . . must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence[.]"  The court must also afford the defendant an opportunity to "present all available accurate information bearing on mitigation of punishment."  *Gunning*, 401 F.3d at 1147.  The district court must then "listen and give careful and serious consideration to such information."  *Id.*

In the present case, the noted record at the January 27, 2020 sentencing shows the Court personally extended Movant an open-ended invitation to speak prior to imposition of sentence, and considered what Movant had to say.  *See Mack*, 200 F.3d at 658  (trial court did not violate defendants' right to allocution at sentencing hearing where defendants were personally addressed by court and provided with opportunity to present information bearing on mitigation); *cf. United States v. Palacios*, 844 F.3d 527, 531 (5th Cir. 2016) (court denied defendant opportunity to allocate when failed to address him personally).  Particularly, the Court considered the prior conviction issue Movant raised during allocution, along with trial counsel's related objection which it overruled.

Movant concedes that the Court personally invited him to speak.  (Doc. 112-1 at 11.)  Still, he argues the Court cut him off, overruled his related objection to a prior conviction listed in the

23

presentencing report, and proceeded to impose sentence. (*Id.*) The record belies these claims. *See e.g.*, *Mack*, 200 F.3d at 658 (citing *United States v. Kellogg,* 955 F.2d 1244, 1250 (9th Cir.1992)) (holding that the right of allocution is not violated when the district court interrupted a defendant); *see also Green*, 365 U.S., at 303-04; *U.S. v. Panice*, 598 F.3d 426, 438 (7th Cir. 2010) (a court need only addressed defendant personally before imposing sentence and permit him to speak in an attempt to mitigate his sentence). Rather, the Court confirmed through counsel that Movant had nothing additional to offer prior to imposition of sentence. *See U.S. v. Strelski*, 523 Fed. Appx. 704, 709 (11th Cir. 2013) (no violation of allocution right where defendant permitted to testify on mitigation and court asked counsel whether defendant wished to further address the court and counsel declined court's offer).[6] Movant did not disagree.[7]

### (2)   No Deficient Conduct at Sentencing

Movant has not overcome the presumption that trial counsel acted reasonably by failing to object to the Rule 32 colloquy on allocution of mitigation grounds. *Strickland*, 466 U.S., at 689. Movant has not demonstrated that trial counsel acted deficiently by failing to make a meritless objection. *See James*, 24 F.3d at 27 (counsel's failure to raise a meritless argument does not amount to ineffective assistance); *Boag*, 769 F.2d at 1344 (counsel was not ineffective by failing to raise a meritless claim). Here, a Rule 32(i)(4)(ii) objection at sentencing would have been meritless and futile, for the reasons stated. Movant does not claim that trial counsel otherwise was deficient at sentencing.

### iii.   *Prejudice*

Movant claims that trial counsel's deficient conduct was presumptively prejudicial because he could have been sentenced to less time if trial counsel had performed in an objectively reasonable manner. (Doc. 112-1 at 12 citing *United States v. Daniels*, 760 F.3d 920, 926 (9th Cir. 2014), *Gunning*, 401 F.3d at 1149; *see also* Doc. 118 at 6-7.) The government argues that Movant has not shown prejudice under the *Strickland* standard because he has not shown that he had anything additional to tell the Court in mitigation of sentence. (Doc 117 at 40 citing *United States v. Marks*,

---

[6] See n.4.

[7] Despite his apparent claim, Movant's right to allocute in mitigation of punishment is not "unlimited." *Kellogg,* 955 F.2d, at 1250.

530 F.3d 799, 813 (9th Cir. 2008); *see also United States v. Guntipally*, 2018 WL 646671, at **2-3 (N.D. Cal. Jan. 30, 2018).

As noted, *Strickland's* second (prejudice) prong applies here and requires that movant show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S., at 694. Even if Movant could show trial counsel acted deficiently at sentencing, he has not pointed to mitigating information that went unpresented. Instead, following Movant's allocution, trial counsel submitted the matter, and Movant acquiesced therein. *Cf. U.S. v. Medrano*, 5 F.3d 1214, 1219 (9th Cir. 1993) (sentence vacated where possibility existed that had defendant been afforded allocution, a different sentence might have resulted). Therefore, he has not raised a reasonable probability of a different sentencing outcome. *See Guntipally*, 2018 WL 646671, at *3.

Movant's argument for presumed prejudice also falls short. Movant has not addressed, much less shown entitlement to, a presumption of prejudice under the *Strickland* line of cases. *See e.g., Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (citing *United States v. Cronic,* 446 U.S. 648*,* 659 (1984)) (the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because "the adversary process itself has been rendered "presumptively unreliable[,]"). The cases upon which Movant relies in arguing for presumed prejudice do not apply the *Strickland* standard. *See Daniels*, 760 F.3d at 935; *Gunning*, 401 F.3d at 1149.

### 4.   Appeal

#### i.   *Collateral Attack Waivers*

For the reasons stated, the Court finds the plea waivers were knowingly and voluntarily entered, and not invalidated by alleged ineffective assistance of trial counsel at the change-of-plea hearing. Consequently, the Court finds the collateral attack waiver bars the § 2255 claim raising ineffective assistance of appellate counsel. The claim is within the noted scope of the collateral attack waiver because it is a § 2255 challenge of his plea, conviction, and sentence, based upon a waivable claim of ineffective assistance of counsel, as discussed above. (*See* Doc. 34 at 8-10); *see also Martinez-Carranza*, 2015 WL 2159821, at *3. Therefore, the Court finds that the collateral attack waiver bars the § 2255 claim of ineffective assistance by appellate counsel.

### ii.   Deficient Performance

Movant claims that appellate counsel acted deficiently by not raising trial counsel's alleged failure detailed above.  Movant argues appellate counsel deficiently raised a weaker trial court error claim, that the guilty plea was unknowing and involuntary due to the change of plea Court's oral misstatement regarding the statutory maximum sentence.[8]  (Doc. 112-1 at 9.)  The government responds that appellate counsel acted reasonably in these regards.   The government points to its above argument that the ineffective assistance claim fails, and further argues that claim would have failed on appeal.  The government argues the trial court error claim that appellate counsel raised on appeal was the stronger claim.   (*See e.g.*, Doc. 117 at 37-38 & n.6.)

### (1)   No Deficient Conduct on Appeal

Movant has not overcome the presumption that appellate counsel acted reasonably by not raising trial counsel's alleged ineffective failure to object on factual basis grounds at change of plea. *Strickland*, 466 U.S., at 689. As a sister court has observed:

> When asserting counsel was objectively unreasonable for failing "to raise a particular claim" on appeal, a petitioner must demonstrate that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Smith*, 528 U.S. at 288, 120 S.Ct. 746 (holding "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."). *Cf. Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (holding performance ineffective where appellate counsel "raised only a single, weak issue, notwithstanding the fact that a substantial, meritorious Fifth Amendment issue was obvious upon even a casual reading of the trial transcript").

*Wilkins v. Macomber*, 2022 WL 912958, at \*41 (N.D. Cal. Mar. 29, 2022). When evaluating the decision of appellate counsel to prioritize some claims over others, a court conducting habeas review must consult the trial record and consider "the potential strategic choices" counsel could have made to determine whether "counsel's conduct falls within the wide range of reasonable professional assistance." *Wilkins*, 2022 WL 912958, at \*41 (citing *Paul v. Pennywell*, 612 F. App'x 453 (9th Cir. 2015)).[9]

For the reasons discussed above, trial counsel was not ineffective for failing to object that the

---

[8] Movant does not address, and the Court does not consider the other claims raised by appellate counsel on appeal. (*See* Doc. 112-1 at 9; Doc. 107 at 2.)

[9] See n.4.

26

factual basis for the guilty plea was lacking.  Appellate counsel reasonably could have determined that claim was relatively weaker than the noted trial court error claim raised on appeal.  Particularly so, as the record clearly showed the Court's misstatement and the government's concession of the error.[10]

Additionally, "[c]laims of ineffective assistance of counsel are generally inappropriate on direct appeal[,]"  *Guntipally*, 2018 WL 646671, at \*2.  Appellate counsel reasonably could have chosen the trial court error claim, which was the better developed claim on the record.  *See id.* (citing *United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000)) (ineffective assistance of trial counsel is appropriately raised on appeal where "the record on appeal is sufficiently developed to permit review and determination of the issue[.]").

Finally, it is well established that appellate counsel need not raise all available claims on appeal, but rather he may winnow out the weaker ones.  *See e.g., Smith*, 528 U.S., at 288; *see also Gray v. Greer*, 800 F.2d 644, 67 (7th Cir. 1986) ("[T]he right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the trial record supports."); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("[E]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

### iii.  Prejudice

Movant claims that appellate counsel's allegedly deficient conduct was prejudicial, that had appellate counsel acted reasonably, there was a reasonable probability of a different outcome on appeal.  (Doc. 112-1 at 9.)  As discussed above, *Strickland's* second prong requires that Movant show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S., at 694.

Assuming arguendo that appellate counsel acted deficiently as alleged, Movant's showing falls short of satisfying the *Strickland* standard.  Movant fails to show a reasonable probability of a different appellate outcome absent appellate counsel's allegedly deficient conduct, for the reasons stated.  *See*

---

[10] The record reflects, and  the Government concedes that the maximum penalty for conspiring to distribute and possessing with intent to distribute methamphetamine is a mandatory minimum of ten years, maximum of life; and that during plea colloquy the Court stated the statutory maximum as "ten years[.]"  (Doc. 117 at 38 n.6; -Doc. 117-1 at 67, 79; *see also* Doc. 71 at 3.)

1   *e.g., Guntipally*, 2018 WL 646671, at \*2.

2   **D.      Oral Hearing**

3           Movant has not requested an oral hearing.  (Docs. 112, 112-1, 118.)  Under § 2255, "a district

4   court must grant a hearing to determine the validity of a petition brought under that section, [u]nless

5   the motions and the files and records of the case conclusively show that the prisoner is entitled to no

6   relief."  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).

7   The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a

8   claim for relief or are so palpably incredible or patently frivolous as to warrant summary

9   dismissal.  *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *Rodriguez*, 49 F.4th at

10  1213.  To earn the right to a hearing, therefore, the movant must make specific factual allegations

11  which, if true, would entitle him to relief.  *Id.*  "The Ninth Circuit's rule is that merely conclusory

12  statements in a § 2255 motion are not enough to require a hearing."  *United States v. Hearst*, 638 F.2d

13  1190, 1194 (9th Cir. 1980). Therefore, a § 2255 motion does not automatically entitle a movant to a

14  hearing if the issues can be conclusively decided on the evidence in the motion, files, and records.

15  *Blackledge v. Allison,* 431 U.S. 63, 80-82 (1977); 28 U.S.C. § 2255(b); *see also United States v.*

16  *Mejia–Mesa,* 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an

17  evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is

18  not entitled to relief"); Rule 8(a), 28 U.S.C.A. foll. § 2255 (the court must review the answer, any

19  transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine

20  whether an evidentiary hearing is warranted); *Fontaine v. United States,* 411 U.S. 213, 215 (1973) (§

21  2255 hearing required unless motion, files, and records conclusively show movant is not entitled to

22  relief). The district court exercises its discretion and common sense in determining whether a hearing

23  is necessary. *U.S. v. Tate*, 523 F. Supp. 2d 165, 169 (D. Conn. 2007); *see also U.S. v. Martinez*, 475 F.

24  Supp. 2d 154, 161 (D. Conn. 2007) (a district court is permitted to dispose of a motion to vacate

25  without hearing where the case records demonstrate the defendant's claims lack merit).

26          The undisputed facts and evidence show that Movant is not entitled to relief, for the reasons

27  stated.  *See U.S. v. Shah*, 878 F.2d 1156, 1160 (9th Cir. 1989) (a district court, in deciding

28  a § 2255 claim of ineffective assistance of counsel in the context of a guilty plea, may rely on the court

record, including transcripts of the plea and sentencing hearings, in lieu of holding a live hearing on the claim).  The motion may be denied as a matter of law without a hearing.  *See Leonti*, 326 F.3d, at 1116 (defendant filing a motion to vacate is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief); *see also Rodriguez-Vega*, 797 F.3d at 791 (citing *Allison,* 431 U.S., at 80–83) ("An oral hearing is not necessary in all cases."); *cf. United States v. Werle*, 35 F.4th 1195, 1202 (9th Cir. 2022) (evidentiary hearing necessary on § 2255 motion to determine factual questions underlying prejudice to overcome procedural default); *Iaea v. Sunn*, 800 F.2d 861, 865-66 (9th Cir. 1986) (remanding "for an evidentiary hearing to determine whether there is a reasonable probability Iaea would not have pled guilty absent counsel's erroneous advice").  Notably, Movant does not raise a dispute of fact, or proffer extra-record evidence.  "Mere conclusory allegations do not warrant an evidentiary hearing."  *See Shah*, 878 F.2d at 1161. Therefore, the Court finds that an oral hearing is not necessary on the motion.

**E.     Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2255. A court may issue a certificate of appealability where the moving party has made a substantial showing of the denial of a constitutional right, and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

The Court finds that Movant has not made a substantial showing of the denial of a constitutional right, for the reasons stated. Furthermore, based on the foregoing, Movant cannot show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**V.     CONCLUSIONS**

For the reasons set forth, the Court **ORDERS**:

1.   The motion for § 2255 relief (Docs. 112, 112-1) is **DENIED**.

2.  The Court DECLINES issuance of a Certificate of Appealability.

3.  The Clerk of the Court is directed to enter JUDGMENT FOR PLAINTIFF and CLOSE THE CASE.

IT IS SO ORDERED.

Dated:   **September 2, 2024**

UNITED STATES DISTRICT JUDGE